# IN THE UNITED STATES DISTRICT COURT *FOR* THE DISTRICT OF COLUMBIA

EDMOND MACHIE      *
     4713 Wisconsin  Av NW      *
     Washington DC 20016      *
     *Plaintiff, Pro Se*      *
vs.      *
**POLICE OFFICER TRAINER,**      *
     **1425 N Courthouse Rd, Suite:5200**      *
     **Arlington, Virginia 22201**      *
     ***Defendant   (1)***      *
Vs.      *
**ARLINGTON COUNTY GOVERNMENT**      *
**Stephen A. MacIsaac**      *
**Office of the County Attorney**      *
**2100 Clarendon Blvd., Suite 403**      *
**Arlington, VA 22201**      *
**TEL: 703-228-3100**      *
***Defendant    (2)***      *
     *    *    *    *    *    *    *

Case: 1:18−cv−01588   **JURY DEMAND**
Assigned To : Unassigned
Assign. Date : 6/29/2018
Description: Pro Se Gen. Civ. **(F−DECK)**

**(Jury Trial Demand)**

## COMPLAINT AND JURY DEMAND

COMES NOW, the Plaintiff, Edmond Machie, as Pro Se adopts and incorporates by reference the Complaint filed in this matter and sues the (Defendants): POLICE OFFICER TRAINER ARLINGTON COUNTY GOVERNMENT and as cause therefor states the following:

### JURISDICTION AND VENUE

1.  This Court has jurisdiction pursuant to 28 U.S.C. § 1332. The matter in controversy exceeds the sum or value of $ 75,000, exclusive of interest and costs, and the party corporations are "citizens" of different States.

2.  Venue is appropriate in this Court pursuant to 28 U.S.C. § 1391.
3.  Obstruction of Justice
4.  Kidnapping
5.  Wrongful Imprisonment
6.  Torture
7.  Public Corruption by Government and/or Justice Employees
8.  Attempt Manslaughter with poisoning with unwanted medication



RECEIVED
Mail Room

JUN 29 2018

Angela D. Caesar, Clerk of Court
U.S. District Court, District of Columbia

9. Frivolous Prosecution in Violation of the Constitution of the United States
10. Violation of the First Amendment of The constitution of the United States of America
11. Violation of the Fourth Amendment of the Constitution of the United States of America
12. Violation of the Fifth Amendment of the Constitution of United State of America
13. Violation of the Sixth Amendment of the Constitution of United States of America
14. Violation of the Seventh Amendment of the Constitution of United State of America
15. Violation of the Eighth Amendment of the Constitution of the United States of America

## PARTIES

16. Plaintiff Edmond K. Machie is Black adult and was in Washington District of Columbia during the incidents. Defendant **TRAINER,** is a White adult, American Citizen with unknown residence.

## STATEMENT OF FACT

17. On or about April 20th, 2012, Plaintiff Edmond Machie was assaulted by a WMATA Bus operator. It appears that Arlington County is a sitting Board member of the Washington Metropolitan Transit Authority

18. ON December 13th, 2016, Plaintiff Edmond Machie was forcibly removed from his Apartment in Arlington Virginia without Court Eviction notice by the Arlington County Police department and The Arlington County Sheriff Department

19. While on eviction proceedings, and the trial with Jury being scheduled for December 15,2016, Judge William Newman put Plaintiff Edmond Machie under arrest as per request of Plaintiff Edmond Machie's opposing attorney William A Musto, Esq from ROEDER & COCHRAN; Case Number: GV16003093-00

20. William A. Musto is a professional RACIST, Corrupted and faker, expert in Tax evasion, and Expert in Eviction specially in using Black against Black and appears to be expert in corrupting Judges and others Corruption of Public Officials.

21. In India, more than 90% of business transaction are made in cash. No electronics transaction and thus no check and thus, untraceable and wherefore, not tax and income report. India is well known

in public Corruption, fraud, tax evasion, RACISM…Drogue trafficking…. Human trafficking… magic and witchcraft and sorcery.

22. At repeated occasion, Bavheen Patel and his attorney William A Musto have attempted to manslaughter Plaintiff Edmond Machie with poisoning, and through one of the roommate.

23. BAVHEEN PATEL, during a trial of the case Number:GV16000749-00 under oath, testified that he was corrupting Arlington County Police Department and Arlington County Sheriff Department and that he has provided some money to some of the Arlington County Judges all with cash money.

24. During the trial in the case Bhaveen Patel vs Edmond Machie in the district court of the Arlington county, Case Number: GV16000749-00Bhaveen Patel several times, stated that he was compliant with the Arlington County Police Department which means he was corrupting the Arlington County Police Department and the Arlington County Sheriff's Department

25. At multiples occasion, Plaintiff noticed that he was followed by under-cover Arlington County Police official including Defendant TRAINER an Arlington County Police Officer

26. Iwo Jama Best Western Hotel is an Indian owned business and next to it is an apartment in which Plaintiff Edmond Machie was tenant and had moved in that place with assistance of Arlington County Police Department

27. On December 14th, 2016 at 11:45 am, Plaintiff Edmond Machie was abducted and taken hostage by the Joint Forces of Arlington County Police Department and the Arlington County Sheriff Department, without an Arrest Warrant and/or Probable Cause

28. Defendant TRAINER appears to be an Arlington County Police Officer and also have testified as Arlington County Circuit Court Clerk.

29. Christopher Falcon an Assistant Clerk at the Arlington County Circuit Court, at multiples times, have be lying under oath to maliciously get Plaintiff in jail as he has treated several times and at multiple times, was transferring the Plaintiff's inquiries about the status of Plaintiff's eviction case to

the Arlington County police and TRAINER appears to be the Police Officer to whom the phone calls were forwarded to

30. Ms Judy Wheat is Legal Counsel for the Arlington County Circuit Court and thus former boss of Plaintiff Edmond Machie. However, she stated that Frio proffered that Machie called asking to speak with a manager, he was told to call back and asked for Christopher Falcon.

31. Christopher Falcon is a clerk in the civil Division of the Arlington County Circuit Court, the same office as Plaintiff's Edmond K. Machie have worked and thus, Christopher was asked to transferred the Countersuit case to the Arlington county commonwealth Attorney Office for prosecution Copy is attached as evidence.

32. Plaintiff has been held Hostage/Incarcerated at the Arlington County Detention Center without bond and no way to contact my family since December 14th, 2016. This could be construed as Torture as it has caused me severe pain and suffering. I have been coercively pushed to confess to something I have no clue.

33.      While Plaintiff was on the Eviction Proceedings at the Arlington County Court, Plaintiff Counter-suit the case and Plaintiff spoke with Ms. Judith Lynne Wheat and Plaintiff told her that Plaintiff was running as Secretary General of International Telecommunication and thus that Plaintiff Edmond Machie will be running as Arlington County Board and then as Arlington County Executive. And Ms Judith Lynne Wheat told Plaintiff that she was going to manslaughter Plaintiff with jailing and put Plaintiff Edmond Machie on schizophrenia medication and Plaintiff will died. Plaintiff told her to make sure Plaintiff body is send back to his country the same day she will commit the murder.

34. Plaintiff have been threatened and/or coerced and Torture into taking treatment and medication for mental illness which Plaintiff do not need. This is construed as a Violation of Plaintiff Right under the TORTURE VICTIM PROTECTION ACT OF 1991,

35. Violation of Plaintiff RIGHTS under the

    a. FIRST AMENDMENT OF THE CONSTITUTION

    b. FOURTH AMENDEMENT OF THE CONSTITUTION

    c. FITH AMENDMENT OF THE CONSTITUTION

    d. SIXTH AMENDMENT OF THE CONSTITUTION

    e. SEVENTH AMENDMENT OF THE CONSTITUTION

    f. EIGHTH AMENDMENTS OF THE CONSTITUTION

36. Plaintiff Machie was arrested and jailed without probable cause and in violation of his constitutional rights to be free from such mistreatment. Plaintiff Machie was arrested based solely on alleged Profane Language Over Public Airway Upon arrest, Defendant Officer TRAINER appeared in Court to testify as Arlington County Circuit Court Clerk

37. That is a critical distinction, and the statements by Defendants are entirely false and misleading. Plaintiff Machie denies that he ever spoke with Defendant TRAINER. As such, Defendants offered lies and false assertions without support nor Probable Cause.

38. As a result of having been alleged to be a Criminal, the plaintiff ended up be homeless without any mean to secure an apartment, and/or secure mortgage even tough has completed the Arlington County first time home buyer's program. Plaintiff's bank closed his accounts and he was unable to find work in the network security field.

39. Plaintiff Machie is the President and CEO of E-Mac Corporation, which engages, in part, on

the setup and installation of telecommunications networks. One of Plaintiff Machie's major

programs, years in the making, a major contract to set up a telecommunications network in

Cameroon and neighboring countries, such as Chad, Nigeria, and other nation

40. Plaintiff Machie has met with numerous Prime Minister(S), on the project, as well as the

U.S. Ambassador to Cameroon, Niels Marquadt. The project included satellite, wireless, and fiber

optics connections for Cameroon and neighboring countries.

41. As a result of Defendants' wrongful actions described herein, Plaintiff Machie was forced to

close his bank account and has had extreme difficulty opening new accounts. For example, Plaintiff

Machie attempted to open accounts with TD Bank, M&T Bank, and Chevy Chase Bank, SunTrust

bank, but they all denied his request to open an account because of the false charges described herein.

42. Plaintiff has also lost over $1,000,000.00 dollars invested in his company E-Mac Corporation.

Plaintiff Machie has further lost present and future contracts. Given the nature of Plaintiff Machie's

field, network security and telecommunications, a false charge and false imprisonment such as that

here is extremely damaging to reputation and character in the field. As such, Plaintiff Machie has

had great trouble obtaining new contracts in the United States and Cameroon or any others countries

in the world.

43. Plaintiff's trial for the criminal charge was scheduled to be held on February 28, 2017 in the

District Court of Arlington County.

44. Arlington County, however, dismissed one charge and convicted in one other charge which

does not require a jail time on that date concluding the criminal complaint matter.

45. At all times relevant hereto, Defendants acted without legal justification or excuse.

46. At all times relevant hereto, Defendants acted with an evil and rancorous motive

influenced by hate, the purpose being to deliberately and willfully injure the plaintiff.

47. At all times relevant hereto, Defendants acted deliberately with ill will, improper motive and actual malice.

48. In the alternative, at all times relevant hereto, Defendants acted with negligence and/or gross negligence in violation of lawful duties owed the plaintiff and within the scope of their/her/his employment as Arlington County personnel.

## COUNT I

## Constitution of Virginia Article I. Bill of Rights

### 49. Section 8. Criminal prosecutions.

50. That in criminal prosecutions a man hath a right to demand the cause and nature of his accusation, to be confronted with the accusers and witnesses, and to call for evidence in his favor, and he shall enjoy the right to a speedy and public trial, by an impartial jury of his vicinage, without whose unanimous consent he cannot be found guilty. He shall not be deprived of life or liberty, except by the law of the land or the judgment of his peers, nor be compelled in any criminal proceeding to give evidence against himself, nor be put twice in jeopardy for the same offense.

51. Laws may be enacted providing for the trial of offenses not felonious by a court not of record without a jury, preserving the right of the accused to an appeal to and a trial by jury in some court of record having original criminal jurisdiction. Laws may also provide for juries consisting of less than twelve, but not less than five, for the trial of offenses not felonious, and may classify such cases, and prescribe the number of jurors for each class.

52. In criminal cases, the accused may plead guilty. If the accused plead not guilty, he may, with his consent and the concurrence of the Commonwealth's Attorney and of the court entered of record, be tried by a smaller number of jurors, or waive a jury. In case of such waiver or plea of guilty, the court shall try the case.

53. The provisions of this section shall be self-executing.

**54. Section 8-A. Rights of victims of crime.**

55. That in criminal prosecutions, the victim shall be accorded fairness, dignity and respect by the officers, employees and agents of the Commonwealth and its political subdivisions and officers of the courts and, as the General Assembly may define and provide by law, may be accorded rights to reasonable and appropriate notice, information, restitution, protection, and access to a meaningful role in the criminal justice process. These rights may include, but not be limited to, the following:

1. The right to protection from further harm or reprisal through the imposition of appropriate bail and conditions of release;

2. The right to be treated with respect, dignity and fairness at all stages of the criminal justice system;

3. The right to address the circuit court at the time sentence is imposed;

4. The right to receive timely notification of judicial proceedings;

5. The right to restitution;

6. The right to be advised of release from custody or escape of the offender, whether before or after disposition; and

7. The right to confer with the prosecution.

56. This section does not confer upon any person a right to appeal or modify any decision in a criminal proceeding, does not abridge any other right guaranteed by the Constitution of the United States or this Constitution, and does not create any cause of action for compensation or damages against the Commonwealth or any of its political subdivisions, any officer, employee or agent of the Commonwealth or any of its political subdivisions, or any officer of the court.

The amendment ratified November 5, 1996 and effective January 1, 1997— Added a new section (8-A).

57. **Section 9. Prohibition of excessive bail and fines, cruel and unusual punishment, suspension of habeas corpus, bills of attainder, and ex post facto laws.**

58. *That excessive bail ought not* to be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted; that the privilege of the writ of habeas corpus shall not be suspended unless when, in cases of invasion or rebellion, the public safety may require; and that the General Assembly shall not pass any bill of attainder, or any ex post facto law.

59. **Section 10. General warrants of search or seizure prohibited**.

60. That general warrants, whereby an officer or messenger may be commanded to search suspected places without evidence of a fact committed, or to seize any person or persons not named, or whose offense is not particularly described and supported by evidence, are grievous and oppressive, and ought not to be granted.

61. **Section 11. Due process of law; obligation of contracts; taking or damaging of private property; prohibited discrimination; jury trial in civil cases.**

62. That no person shall be deprived of his life, liberty, or property without due process of law; that the General Assembly shall not pass any law impairing the obligation of contracts; and that the right to be free from any governmental discrimination upon the basis of religious conviction, race, color, sex, or national origin shall not be abridged, except that the mere separation of the sexes shall not be considered discrimination.

**63.** That in controversies respecting property, and in suits between man and man, trial by jury is preferable to any other, and ought to be held sacred. The General Assembly may limit the number of jurors for civil cases in courts of record to not less than five.

**64.** That the General Assembly shall pass no law whereby private property, the right to which is fundamental, shall be damaged or taken except for public use. No private property shall be damaged or taken for public use without just compensation to the owner thereof. No more private property may be taken than necessary to achieve the stated public use. Just compensation shall be no less than the value of the property taken, lost profits and lost access, and damages to the residue caused by the taking. The terms "lost profits" and "lost access" are to be defined by the General Assembly. A public service company, public service corporation, or railroad exercises the power of eminent domain for public use when such exercise is for the authorized provision of utility, common carrier, or railroad services. In all other cases, a taking or damaging of private property is not for public use if the primary use is for private gain, private benefit, private enterprise, increasing jobs, increasing tax revenue, or economic development, except for the elimination of a public nuisance existing on the property. The condemnor bears the burden of proving that the use is public, without a presumption that it is.

The amendment ratified November 6, 2012, and effective January 1, 2013—In the heading of the section, after "taking", added "or damaging". In paragraph one, after "contracts", deleted ", nor any law whereby private property shall be taken or damaged for public uses, without just compensation, the term 'public uses' to be defined by the General Assembly". Added a new paragraph after paragraph two.

65.       As a result of the deprivation of his rights, plaintiff was subjected to an unnecessary and excessive use of force.

66.       The individual defendants, at all times relevant hereto, acted under color of State law and in a manner which was not objectively reasonable.

67.     As a direct and proximate result of the aforesaid conduct, actions and inactions of the

defendants and that stated elsewhere herein, the plaintiff was caused to suffer and continues to suffer

temporary and permanent physical injuries, physical pain and suffering, mental pain and suffering,

including but not limited to, undue emotional distress, mental anguish, humiliation, embarrassment,

loss of respect, shame, loss of enjoyment of life and disability, economic damages including, but not

limited to, past and future medical bills and expenses, past and future lost time and wages from work,

past and future lost earning capacity and unnecessary attorneys' fees defending himself from the

criminal charges filed without probable cause, all to the great detriment of the plaintiff.

68.     All of the plaintiff's injuries, losses and damages – past, present and prospective – were

caused solely by the conduct, actions and inactions of the defendants, as set forth herein, without any

negligence, want of due care, or provocation on the part of the plaintiff, either directly or indirectly.

WHEREFORE, the plaintiff, Edmond Machie, demands judgment against the (Defendants):

POLICE OFFICER TRAINER, and Arlington County, Virginia and severally, in the amount of Five

Million Dollars ($50,000,000.00) in compensatory damages and Five Million Dollars ($5,000,000.00)

in punitive damages, plus attorneys' fees, interest and costs.

## Count II
### (Violation of the Maryland Declaration of Rights, Article 26)

69. Plaintiff adopts by reference the allegations contained in the foregoing paragraphs of his

Complaint with the same effect as if fully set forth herein.

70. The defendants engaged in activity that violated the plaintiff's rights as protected under the

Maryland Constitution.

71. By the actions detailed herein, including, but not limited to, the use of excessive force against

the plaintiff, the warrantless searches of the Plaintiff without probable cause, the arrest of the plaintiff

without probable cause, and the false charges filed against the plaintiff, the defendants deprived the

plaintiff of his rights under the Maryland Declaration of Rights, including, but not limited to:

A- Articles 1–3 address the subject of rights and the relationship between government and the governed. Article 1 states that "all men are by nature equally free and independent, and have certain inherent rights of which . . . they cannot deprive or divest their posterity; namely, the enjoyment of life and liberty, with the means of acquiring and possessing property, and pursuing and obtaining happiness and safety," a statement later made internationally famous in the first paragraph of the U.S. Declaration of Independence, as "we hold these truths to be self-evident that all men are created equal, and are endowed by their Creator with certain unalienable rights, that among these are Life, Liberty and the pursuit of Happiness."

B- Articles 2 and 3 note the revolutionary concept that "all power is vested in, and consequently derived from, the people..."[11] and that "whenever any government shall be found inadequate or contrary to these purposes, a majority of the community hath an indubitable, unalienable, and indefeasible right to reform, alter or abolish it, in such manner as shall be judged most conducive to the public weal."

C- Article 4 asserts the equality of all citizens, rejecting the notion of privileged political classes or hereditary offices – another criticism of British institutions such as the House of Lords and the privileges of the peerage: "no set of men, are entitled to exclusive or separate emoluments or privileges from the community, but in consideration of public services; which, not being descendible, neither ought the offices of magistrate, legislator, or judge be hereditary."

D- Articles 5 and 6 recommend the principles of separation of powers and free elections, "frequent, certain, and regular"[12] of executives and legislators: "That the legislative and executive powers of the state should be separate and distinct from the judicative; and, that the members of the two first...should, at fixed periods, be reduced to a private station, return into that body from which they were originally taken...by frequent, certain, and regular elections."[12]

E- Articles 7–16 propose restrictions on the powers of the government, declaring the government should not have the power of suspending or executing laws, "without consent of the representatives of the people";[13] establishing the legal rights to be "confronted with the accusers and witnesses, to call for evidence in his favor, and to a speedy trial by an impartial jury of his vicinage," and to prevent a citizen from being "compelled to give evidence against himself."[14] protections against "cruel and unusual punishments",[15] baseless search and seizure,[16] and the guarantees of a trial by jury,[17] freedom of the press,[18] freedom of religion ("all men are equally entitled to the free exercise of religion"),[19] and "the proper, natural, and safe defense of a free state" rested in a well-regulated militia composed of the body of the people, trained to arms, that standing armies in time of peace, should be avoided as dangerous to liberty;[20] Article 8 protects a person against "being deprived of his liberty except by the law of the land" which later evolved into the due process clause in the federal Bill of Rights.[18] Article 12 is the first ever codification of the right to a free press and was an important precursor to the First Amendment to the United States Constitution.[21]

72. The plaintiff has a right to be free from the use of excessive and unnecessary physical force on his person by the police. This right was denied the plaintiff when the defendant police officers used excessive and unnecessary physical force on the plaintiff without legal cause, excuse or justification.

73.     The plaintiff has a right to be free from warrantless searches without probable cause. This right was denied the plaintiff when the defendant police officers searched and seized Plaintiff without a warrant and without probable cause or other legal excuse or justification.

74.     The plaintiff has a right to be free from arrest and detention without probable cause, legal excuse or justification. This right was denied the plaintiff when the Defendant Officers arrested and detained the plaintiff without probable cause, legal excuse or justification.

75.     The plaintiff has a protected property and liberty interest in his freedom, his ability to exercise his free will and domain over his person, his ability to be free from unlawful and unwelcome abuse and attack by the police and his ability to practice his chosen profession and earn a living thereby.

76.     The plaintiff was deprived of numerous protected property and liberty interests by the defendants.

77.     The plaintiff was afforded less process than was due under law by the defendants in depriving him of the rights in question.

78.     By the actions detailed above, including, but not limited to, the use of excessive force against the plaintiff, the warrantless search and seizure of Plaintiff without probable cause, the arrest of the plaintiff without probable cause, and the false charges filed against the plaintiff, the defendants deprived the plaintiff of his constitutional rights under Article 26 of the Maryland Declaration of Rights, including, but not limited to, freedom from abuse of power by the police.

79.     As a result of the deprivation of his rights, plaintiff was subjected to an unnecessary and excessive use of force.

80.     The individual defendants, at all times relevant hereto, acted under color of State law and in a manner which was not objectively reasonable.

81.     As a direct and proximate result of the aforesaid conduct, actions and inactions of the defendants and that stated elsewhere herein, the plaintiff was caused to suffer and continues to suffer temporary and permanent physical injuries, physical pain and suffering, mental pain and suffering, including but not limited to, undue emotional distress, mental anguish, death of Plaintiff's father and plaintiff's older sister and death of Plaintiff's step mother, humiliation, embarrassment, loss of respect, shame, loss of enjoyment of life and disability, economic damages including, but not limited to, past and future medical bills and expenses, past and future lost time and wages from work, past and future lost earning capacity and unnecessary attorneys' fees defending himself from the criminal charges filed without probable cause, all to the great detriment of the plaintiff.

82.     All of the plaintiff's injuries, losses and damages – past, present and prospective – were caused solely by the conduct, actions and inactions of the defendants, as set forth herein, without any negligence, want of due care, or provocation on the part of the plaintiff, either directly or indirectly.

        WHEREFORE, the plaintiff, Edmond Machie, demands judgment against the (defendants): POLICE OFFICER TRAINER, and Arlington County, Virginia and severally, in the amount of Five Million Dollars ($50,000,000.00) in compensatory damages and Five Million Dollars ($5,000,000.00) in punitive damages, plus attorneys' fees, interest and costs.

## Count III
### (Violation of Maryland Declaration of Rights, Article 26)

83.     Plaintiff adopts by reference the allegations contained in the foregoing paragraphs of this Second Amended Complaint with the same effect as if fully set forth herein.

84.     The defendants engaged in activity that violated the plaintiff's rights as protected under the Maryland Constitution.

85.     By the actions detailed herein, including, but not limited to, the use of excessive force against the plaintiff, the warrantless searches of the Plaintiff without probable cause, the arrest of the plaintiff

without probable cause, and the false charges filed against the plaintiff, the defendants deprived the plaintiff of his rights under the Maryland Declaration of Rights, including, but not limited to:

    (a) freedom from imprisonment and seizure of freehold, liberty and privilege without due process, and without judgment of his peers;

    (b) freedom from the deprivation of liberty without due process of the law, and without the judgment of his peers;

    (c) freedom from the abuse of power by the police; and

    (d) freedom from summary punishment.

86.    The plaintiff has a right to be free from the use of excessive and unnecessary physical force on his person by the police. This right was denied the plaintiff when the defendant police officers used excessive and unnecessary physical force on the plaintiff without legal cause, excuse or justification.

87.    The plaintiff has a right to be free from the warrantless search and seizure of plaintiff without probable cause. This right was denied the plaintiff when the defendant police officers searched and seized Plaintiff without a warrant and without probable cause or other legal excuse or justification.

88.    The plaintiff has a right to be free from arrest and detention without probable cause, legal excuse or justification. This right was denied the plaintiff when the defendant police officers arrested and detained the plaintiff without probable cause, legal excuse or justification.

89.    The plaintiff has a protected property and liberty interest in his freedom, his ability to exercise his free will and domain over his person, his ability to be free from the unlawful and unwelcome intrusion by the police, his ability to be free from unlawful and unwelcome battery by the police and his ability to practice his chosen profession and earn a living thereby.

90.    The plaintiff was deprived of numerous protected property and liberty interests by the defendants.

91.    The plaintiff was afforded less process than was due under law by the defendants in

depriving his of the rights in question.

92.     By the actions detailed above, including, but not limited to, the use of excessive force against

the plaintiff, the warrantless search and seizure of plaintiff without probable cause, the arrest of the

plaintiff without probable cause, and the false charges filed against the plaintiff, the defendants

deprived the plaintiff of his constitutional rights under Article 26 of the Maryland Declaration of

Rights, including, but not limited to, freedom from abuse of power by the police.

93.     As a result of the deprivation of his rights, plaintiff was subjected to an unnecessary and

excessive use of force.

94.     The individual defendants, at all times relevant hereto, acted under color of State law and in a

manner which was not objectively reasonable.

95.     As a direct and proximate result of the aforesaid conduct, actions and inactions of the

defendants and that stated elsewhere herein, the plaintiff was caused to suffer and continues to suffer

temporary and permanent physical injuries, physical pain and suffering, mental pain and suffering,

including but not limited to, undue emotional distress, mental anguish, death of Plaintiff's father and

plaintiff's older sister and death of Plaintiff's step mother, humiliation, embarrassment, loss of

respect, shame, loss of enjoyment of life and disability, economic damages including, but not limited

to, past and future medical bills and expenses, past and future lost time and wages from work, past

and future lost earning capacity and unnecessary attorneys' fees defending himself from the criminal

charges filed without probable cause, all to the great detriment of the plaintiff.

96.     All of the plaintiff's injuries, losses and damages – past, present and prospective – were

caused solely by the conduct, actions and inactions of the defendants, as set forth herein, without any

negligence, want of due care, or provocation on the part of the plaintiff, either directly or indirectly.

        WHEREFORE, the plaintiff, Edmond Machie, demands judgment against the (defendants):

POLICE OFFICER TRAINER, and Arlington County, Virginia jointly and severally, in the amount of Five Million Dollars ($50,000,000.00) in compensatory damages and Five Million Dollars ($5,000,000.00) in punitive damages, plus attorneys' fees, interest and costs.

## Count IV
### (False Arrest)

97. Plaintiff adopts by reference the allegations contained in the foregoing paragraphs of this Complaint with the same effect as if fully set forth herein.

98. The defendants' use of excessive force, unlawful search and seizure, and the arrest and detention of the plaintiff occurred without just cause, probable cause or other lawful excuse, justification or reason.

99. The defendants' conduct of confining the plaintiff, against his will and by threat of force, amounted to the false arrest of plaintiff.

100. The conduct of the individual defendants was extreme and outrageous and beyond the bounds of decency in society.

101. The conduct of the defendants was willful and intentional.

102. The arrest unlawfully caused the false imprisonment of the plaintiff.

103. The above-described false arrest was an abuse of the privilege of detention, and the individual defendants, acting within the scope of their employment, acted in detaining the plaintiff without the proper right to do so.

104. The plaintiff was forced by agents, servants, officers and employees of Arlington County, through the action and inaction of the individual defendants, to submit to such arrest and detention, as well as the indignities and humiliation described above, entirely against his will.

105. The defendants failed to follow normal and accepted police practices and procedures in the false arrest of the plaintiff.

106.    The defendants intentionally and unlawfully restrained the plaintiff and deprived the
plaintiff of his liberty.

107.    The plaintiff did not consent to the restraint of his liberty

108.    The deprivation of the plaintiff's liberty was without any legal justification and was done
deliberately.

109.    As a direct and proximate result of the aforesaid conduct, actions and inactions of the
defendants and that stated elsewhere herein, the plaintiff was caused to suffer and continues to suffer
temporary and permanent physical injuries, physical pain and suffering, mental pain and suffering,
including but not limited to, undue emotional distress, mental anguish, death of Plaintiff's father and
plaintiff's older sister and death of Plaintiff's step mother, humiliation, embarrassment, loss of
respect, shame, loss of enjoyment of life and disability, economic damages including, but not limited
to, past and future medical bills and expenses, past and future lost time and wages from work, past
and future lost earning capacity and unnecessary attorneys' fees defending himself from the criminal
charges filed without probable cause, all to the great detriment of the plaintiff.

110.    All of the plaintiff's injuries, losses and damages – past, present and prospective – were
caused solely by the conduct, actions and inactions of the defendants, as set forth herein, without any
negligence, want of due care, or provocation on the part of the plaintiff, either directly or indirectly.

WHEREFORE, the plaintiff, Edmond Machie, demands judgment against the (defendants):
POLICE OFFICER TRAINER, and Arlington County, Virginia jointly and severally, in the amount of
Five Million Dollars ($50,000,000.00) in compensatory damages and Five Million Dollars
($5,000,000.00) in punitive damages, plus attorneys' fees, interest and costs.

## Count V
### (False and Wrongful Imprisonment)

111.    Plaintiff adopts by reference the allegations contained in the foregoing paragraphs this

Second Amended Complaint with the same effect as if fully set forth herein

112.     The defendants restrained the liberty of the plaintiff by acts including, but not limited to, physically taking hold of his person, applying handcuffs to him, forcing him against his will to leave, and arresting and imprisoning him.

113.     The actions of the defendants caused the plaintiff to be unlawfully deprived of his liberty.

114.     The plaintiff did not consent to the deprivation of his liberty by the defendants.

115.     The plaintiff was conscious of and harmed by the unlawful restriction of his liberty.

116.     The confinement of the plaintiff by the defendants was complete.

117.     The defendants acted with the specific intent to deprive the defendant of his physical freedom and liberty and to imprison him.

118.     The defendants had no legal authority to arrest the plaintiff under the circumstances.

> *Within the context of false imprisonment, an imprisonment occurs when a person is restrained from moving from a location or bounded area, as a result of a wrongful intentional act, such as the use of force, threat, coercion, or abuse of authority.*
>
> *The following are examples of false imprisonment.*
>
> - *The taking hostage of a bank's customers and employees by bank robbers.*
> - *The detention of a customer by a business owner (e.g., hotel operator, apartment owner, credit card company) for the failure to pay a bill.*
> - *A robber in a home invasion ties hostages up and takes them to a separate room.*
>
> *Detention that is not false imprisonment*
>
> *Even when a person is involuntarily detained, not all acts of detention amount to false imprisonment. The law may privilege a person to detain somebody else against their will. A legally authorized detention does not constitute false imprisonment. Likewise, false imprisonment requires an intentional act and an accidental detention will not support a claim of false imprisonment.*

*By country*

**United States**

*Under United States law, police officers have the right to detain individuals based on probable cause that a crime has been committed and the individual was involved, or based on reasonable suspicion that the individual has been, is, or is about to be engaged in a criminal activity.*

**Elements**

*To prevail under a false imprisonment claim, a plaintiff must prove: (1) willful detention in a bounded area; (2) without consent; and (3) without authority of lawful arrest.(Restatement of the Law, Second, Torts)*

**Shopkeeper's privilege**
*Main article: Shopkeeper's privilege*

*Many jurisdictions in the United States recognize the common law known as shopkeeper's privilege under which a person is allowed to detain a suspected shoplifter on store property for a reasonable period of time. The shopkeeper has cause to believe that the detainee in fact committed, or attempted to commit, theft of store property. The shopkeeper is allowed to ask the suspect to demonstrate that he or she has not been shoplifting. The purpose of the shopkeeper's privilege is to discover if the suspect is shoplifting and, if so, whether the shoplifted item can be reclaimed. The shopkeeper's privilege, although recognized in most jurisdictions, is not as broad a privilege as that of a police officer's. Therefore, one must pay special attention to the temporal element: the shopkeeper may only detain the suspected criminal for a relatively short period of time. This is similar to a general right in many jurisdictions, and in limited circumstances, of citizen's arrest of suspected criminals by private citizens. In those jurisdictions without the privilege, detaining someone who has not committed a crime, even if done in good faith, is false imprisonment and can result in punitive damages for the unlawful detention.*

**Rationale**

*This privilege has been justified by the very practical need for some degree of protection for shopkeepers in their dealings with suspected shoplifters. Absent such privilege, a shopkeeper would be faced with the dilemma of either allowing suspects to leave without challenge or acting upon his suspicion and risk making a false arrest.*

**Requirement**

*In order for a customer to be detained, the shopkeeper must:[6]*

1. *Conduct the investigation on the store premises, or immediately near the premises.*
2. *Have reasonable cause to believe the person detained was shoplifting.*
3. *Use reasonable (non-excessive) force to detain the suspected individual.*
4. *Not prolong the detention longer than a reasonable amount of time needed to gather all the facts.*

*The test of liability is not based on the store patron's guilt or innocence, but instead on the reasonableness of the store's action under the circumstances; the trier of fact usually determines whether reasonable belief is established. A guilty shoplifter can still sue for false imprisonment then if the detention was unreasonable.*

**Purpose**

*The privilege for the most part is to be able to return the stolen goods. The shopkeeper may not force a confession. They do have a right to conduct a contemporaneous search of the person and the objects within that person's control.*

### Examples

### Colorado

*In Enright v. Groves, a woman sued a police officer for false imprisonment after being arrested for not producing her <u>driver's license</u>. The plaintiff was in her car when she was approached by the officer for not leashing her dog; she was arrested after being asked to produce her driver's license and failing to do so. She won her claim, despite having lost the case of not leashing her dog. The court reasoned that the officer did not have proper legal authority in arresting her, because he arrested her for not producing her driver's license (which itself was not a crime) as opposed to the dog leash violation.*

### Indiana

*In a Clark County, Indiana Circuit Court case, Destiny Hoffman was jailed for 154 days, during which "no hearing was conducted to determine the validity of such sanction and the defendant was not represented by counsel" according to deputy county prosecutor Michaelia Gilbert. An order by Judge Jerry Jacobiin the Clark County Circuit Court case was supposed to be a 48-hour jail stay for Hoffman, pending drug evaluation and treatment, "until further order of the court." After a motion by Prosecutor Gilbert, Special Judge Steve Fleece ordered Hoffman released and said Hoffman's incarceration was "a big screw up".*

### Louisiana

*In a Louisiana case in the United States, a pharmacist and his pharmacy were found liable by a trial court for false imprisonment. They stalled for time and instructed a patient to wait while simultaneously and without the patient's knowledge calling the police. The pharmacist was suspicious of the patient's prescription, which her doctor had called in previously. When the police arrived, they arrested the patient. While the patient was in jail, the police verified with her doctor that the prescription was authentic and that it was meant for her. After this incident, the patient sued the pharmacy and its employees. She received $20,000 damages. An appeals court reversed the judgment, because it believed the elements of false imprisonment were not met.*

### United Kingdom

*Under <u>UK law</u>, police have the right to arrest under conditions set out in <u>PACE</u> Code G. As a general rule, to be lawful an arrest must be supported by <u>probable cause</u>. An arrest may also occur if the police have a reasonable belief that an offence of <u>felony</u> has occurred or will occur for which the arrested person is responsible. An arrest may also occur if the identity of the person arrested is in question, such that an attempt to later hale the person to court through a <u>writ</u>, <u>summons</u> or investigation will be frustrated. Also, arrest may be lawful if the police have reason to believe that the person arrested poses an imminent risk of harm to themselves or others.*

*The police may also detain a person under principles of prompt investigation, for such purposes as gaining evidence or taking statements. However, the taking of fingerprints is not deemed necessary for prompt investigation except when taking fingerprints from persons present at a crime scene.*

*Under observance of due process of law and bill of rights, a freeman is protected in law from <u>arbitrary arrest</u> and <u>unlawful imprisonment</u> and <u>remand</u>.*

*In the United Kingdom, a case was brought to the <u>High Court</u> concerning the alleged unlawful detention of hundreds of members of the public during the <u>May Day riots of 2001</u> in London, England. The police, using the tactic of "<u>kettling</u>", held a large crowd in <u>Oxford Circus</u> for several hours without allowing anyone to leave. Lois Austin, a peaceful protestor who had not broken the law, and Geoffrey Saxby, an innocent passer-by who was not involved in the demonstration, claimed that they were falsely imprisoned by the London <u>Metropolitan Police</u> and that their detention was in breach of the <u>European Convention of Human Rights</u>. The pair lost their court action in 2005, when the High Court ruled that the police had not acted unlawfully. An appeal against the ruling also failed in 2007. A ruling by the <u>House of Lords</u> declared that even in the case of an absolute right, the High Court was entitled to take the "purpose" of the deprivation of liberty into account before deciding if human rights law applied at all.*

*As a direct and proximate result of the aforesaid conduct, actions and inactions of the defendants and that stated elsewhere herein, the plaintiff was caused to suffer and continues to suffer temporary and permanent physical injuries, physical pain and suffering, mental pain and suffering, including but not limited to, undue emotional distress, mental anguish, humiliation, embarrassment, loss of respect, shame, loss of enjoyment of life and disability, economic damages including, but not limited to, past and future medical bills and expenses, past and future lost time and wages from work, past and future lost earning capacity and unnecessary attorneys' fees defending himself from the criminal charges filed without probable cause, all to the great detriment of the plaintiff.* *Within the context of false imprisonment, an imprisonment occurs when a person is restrained from moving from a location or bounded area, as a result of a wrongful intentional act, such as the use of force, threat, coercion, or abuse of authority.*

*The following are examples of false imprisonment.*

- *The taking hostage of a bank's customers and employees by bank robbers.*
- *The detention of a customer by a business owner (e.g., hotel operator, apartment owner, credit card company) for the failure to pay a bill.*
- *A robber in a home invasion ties hostages up and takes them to a separate room.*

### *Detention that is not false imprisonment*

*Even when a person is involuntarily detained, not all acts of detention amount to false imprisonment. The law may privilege a person to detain somebody else against their will. A legally authorized detention does not constitute false imprisonment. Likewise, false imprisonment requires an intentional act and an accidental detention will not support a claim of false imprisonment.*

### *By country*

#### **United States**

*Under <u>United States law</u>, police officers have the right to detain individuals based on <u>probable cause</u> that a crime has been committed and the individual was involved, or based on <u>reasonable suspicion</u> that the individual has been, is, or is about to be engaged in a criminal activity.*

#### **Elements**

*To prevail under a false imprisonment claim, a plaintiff must prove: (1) willful detention in a bounded area; (2) without consent; and (3) without authority of lawful arrest.(Restatement of the Law, Second, Torts)*

### Shopkeeper's privilege
*Main article: Shopkeeper's privilege*

*Many jurisdictions in the United States recognize the common law known as shopkeeper's privilege under which a person is allowed to detain a suspected shoplifter on store property for a reasonable period of time. The shopkeeper has cause to believe that the detainee in fact committed, or attempted to commit, theft of store property. The shopkeeper is allowed to ask the suspect to demonstrate that he or she has not been shoplifting. The purpose of the shopkeeper's privilege is to discover if the suspect is shoplifting and, if so, whether the shoplifted item can be reclaimed. The shopkeeper's privilege, although recognized in most jurisdictions, is not as broad a privilege as that of a police officer's. Therefore, one must pay special attention to the temporal element: the shopkeeper may only detain the suspected criminal for a relatively short period of time. This is similar to a general right in many jurisdictions, and in limited circumstances, of citizen's arrest of suspected criminals by private citizens. In those jurisdictions without the privilege, detaining someone who has not committed a crime, even if done in good faith, is false imprisonment and can result in punitive damages for the unlawful detention.*

### Rationale

*This privilege has been justified by the very practical need for some degree of protection for shopkeepers in their dealings with suspected shoplifters. Absent such privilege, a shopkeeper would be faced with the dilemma of either allowing suspects to leave without challenge or acting upon his suspicion and risk making a false arrest.*

### Requirement

*In order for a customer to be detained, the shopkeeper must:*

1. *Conduct the investigation on the store premises, or immediately near the premises.*
2. *Have reasonable cause to believe the person detained was shoplifting.*
3. *Use reasonable (non-excessive) force to detain the suspected individual.*
4. *Not prolong the detention longer than a reasonable amount of time needed to gather all the facts.*

*The test of liability is not based on the store patron's guilt or innocence, but instead on the reasonableness of the store's action under the circumstances; the trier of fact usually determines whether reasonable belief is established. A guilty shoplifter can still sue for false imprisonment then if the detention was unreasonable.*

### Purpose

*The privilege for the most part is to be able to return the stolen goods. The shopkeeper may not force a confession. They do have a right to conduct a contemporaneous search of the person and the objects within that person's control.*

### Examples

### Colorado

*In Enright v. Groves, a woman sued a police officer for false imprisonment after being arrested for not producing her driver's license. The plaintiff was in her car when*

she was approached by the officer for not leashing her dog; she was arrested after being asked to produce her driver's license and failing to do so. She won her claim, despite having lost the case of not leashing her dog. The court reasoned that the officer did not have proper legal authority in arresting her, because he arrested her for not producing her driver's license (which itself was not a crime) as opposed to the dog leash violation.

### Indiana

In a Clark County, Indiana Circuit Court case, Destiny Hoffman was jailed for 154 days, during which "no hearing was conducted to determine the validity of such sanction and the defendant was not represented by counsel" according to deputy county prosecutor Michaelia Gilbert. An order by Judge Jerry Jacobi in the Clark County Circuit Court case was supposed to be a 48-hour jail stay for Hoffman, pending drug evaluation and treatment, "until further order of the court." After a motion by Prosecutor Gilbert, Special Judge Steve Fleece ordered Hoffman released and said Hoffman's incarceration was "a big screw up".

### Louisiana

In a Louisiana case in the United States, a pharmacist and his pharmacy were found liable by a trial court for false imprisonment. They stalled for time and instructed a patient to wait while simultaneously and without the patient's knowledge calling the police. The pharmacist was suspicious of the patient's prescription, which her doctor had called in previously. When the police arrived, they arrested the patient. While the patient was in jail, the police verified with her doctor that the prescription was authentic and that it was meant for her. After this incident, the patient sued the pharmacy and its employees. She received $20,000 damages. An appeals court reversed the judgment, because it believed the elements of false imprisonment were not met.

### United Kingdom

Under UK law, police have the right to arrest under conditions set out in PACE Code G. As a general rule, to be lawful an arrest must be supported by probable cause. An arrest may also occur if the police have a reasonable belief that an offence of felony has occurred or will occur for which the arrested person is responsible. An arrest may also occur if the identity of the person arrested is in question, such that an attempt to later hale the person to court through a writ, summons or investigation will be frustrated. Also, arrest may be lawful if the police have reason to believe that the person arrested poses an imminent risk of harm to themselves or others.

The police may also detain a person under principles of prompt investigation, for such purposes as gaining evidence or taking statements. However, the taking of fingerprints is not deemed necessary for prompt investigation except when taking fingerprints from persons present at a crime scene.

Under observance of due process of law and bill of rights, a freeman is protected in law from arbitrary arrest and unlawful imprisonment and remand.

In the United Kingdom, a case was brought to the High Court concerning the alleged unlawful detention of hundreds of members of the public during the May Day riots of 2001 in London, England. The police, using the tactic of "kettling", held a large crowd in Oxford Circus for several hours without allowing anyone to leave. Lois Austin, a peaceful protestor who had not broken the law, and Geoffrey Saxby, an innocent passer-by who was not involved in the demonstration, claimed that they were falsely imprisoned by the London Metropolitan Police and that their detention was in breach of the European Convention of Human Rights. The pair lost their court action in

> *2005, when the High Court ruled that the police had not acted unlawfully. An appeal against the ruling also failed in 2007. A ruling by the <u>House of Lords</u> declared that even in the case of an absolute right, the High Court was entitled to take the "purpose" of the deprivation of liberty into account before deciding if human rights law applied at all.*

119.      All of the plaintiff's injuries, losses and damages – past, present and prospective – were caused solely by the conduct, actions and inactions of the defendants, as set forth herein, without any negligence, want of due care, or provocation on the part of the plaintiff, either directly or indirectly.

WHEREFORE, the plaintiff, Edmond Machie, demands judgment against the (defendants): POLICE OFFICER TRAINER, and Arlington County Government, Virginia jointly and severally, in the amount of Five Million Dollars ($50,000,000.00) in compensatory damages and Five Million Dollars ($5,000,000.00) in punitive damages, plus attorneys' fees, interest and costs.

## <u>Count VI</u>
## (Battery)

120.      Plaintiff adopts by reference the allegations contained in foregoing paragraphs of this Second Amended Complaint with the same effect as if fully set forth herein.

121.      Defendants attacked the plaintiff, by pushing him multiple times, grabbing him, twisting his arms, forcefully manipulating him, and handcuffing him in an extremely tight manner was a battery. Moreover, Defendants had not authority to arrest Plaintiff, and, as such, their actions constituted a battery

122.      The force used by the defendants in falsely arresting the plaintiff was excessive beyond any force reasonably called for in the circumstances.

123.      The plaintiff did not resist, and he did not fight or obstruct any actions of the defendants.

124.      The defendants intentionally and deliberately touched the plaintiff in an unwelcome, unreasonable and harmful manner without legal cause, excuse or justification.

125.      The defendants acted in disregard for the pain and injuries suffered by the plaintiff and inflicted by the defendants.

126.     As a direct and proximate result of the aforesaid conduct, actions and inactions of the

defendants and that stated elsewhere herein, the plaintiff was caused to suffer and continues to suffer

temporary and permanent physical injuries, physical pain and suffering, mental pain and suffering,

including but not limited to, undue emotional distress, mental anguish, death of Plaintiff's father and

plaintiff's older sister and death of Plaintiff's step mother, humiliation, embarrassment, loss of respect,

shame, loss of enjoyment of life and disability, economic damages including, but not limited to, past

and future medical bills and expenses, past and future lost time and wages from work, past and future

lost earning capacity and unnecessary attorneys' fees defending himself from the criminal charges filed

without probable cause, all to the great detriment of the plaintiff.

127.     All of the plaintiff's injuries, losses and damages – past, present and prospective – were caused

solely by the conduct, actions and inactions of the defendants, as set forth herein, without any

negligence, want of due care, or provocation on the part of the plaintiff, either directly or indirectly.

        WHEREFORE, the plaintiff, Edmond Machie, demands judgment against the (defendants,): POLICE

        OFFICER TRAINER, and Arlington County Government, Virginia jointly and severally, in the amount

        of Five Million Dollars ($50,000,000.00) in compensatory damages and Five Million Dollars

        ($5,000,000.00) in punitive damages, plus attorneys' fees, interest and costs.

## Count VII
### (Assault)

128.         Plaintiff adopts by reference the allegations contained in the foregoing paragraphs of this

Second Amended Complaint with the same effect as if fully set forth herein.

129.         Defendants threatened Plaintiff with the threat of force and arrest.

130.         Defendants acted with the intent and capability of to do bodily harm to Plaintiff.

131.         Defendants apparently possessed, and in actuality did possess, the ability to carry out

those threats of harm.

132.         As a result of Defendants' threats, Plaintiff was reasonably apprehensive of imminent bodily harm, including battery.

133.         Defendants' actions were perpetrated with actual malice.

134.     As a direct and proximate result of the aforesaid conduct, actions and inactions of the defendants and that stated elsewhere herein, the plaintiff was caused to suffer and continues to suffer temporary and permanent physical injuries, physical pain and suffering, mental pain and suffering, including but not limited to, undue emotional distress, mental anguish, death of Plaintiff's father and plaintiff's older sister and death of Plaintiff's step mother, humiliation, embarrassment, loss of respect, shame, loss of enjoyment of life and disability, economic damages including, but not limited to, past and future medical bills and expenses, past and future lost time and wages from work, past and future lost earning capacity and unnecessary attorneys' fees defending himself from the criminal charges filed without probable cause, all to the great detriment of the plaintiff.

135.         All of the plaintiff's injuries, losses and damages – past, present and prospective – were caused solely by the conduct, actions and inactions of the defendants, as set forth herein, without any negligence, want of due care, or provocation on the part of the plaintiff, either directly or indirectly.

         WHEREFORE, the plaintiff, Edmond Machie, demands judgment against the (defendants): POLICE OFFICER TRAINER, and Arlington County Government, Virginia jointly and severally, in the amount of Five Million Dollars ($50,000,000.00) in compensatory damages and Five Million Dollars ($5,000,000.00) in punitive damages, plus attorneys' fees, interest and costs.

### Count VIII
### (Malicious Prosecution)

136.         Plaintiff adopts by reference the allegations contained in the foregoing paragraphs of this Second Amended Complaint with the same effect as if fully set forth herein.

137.         Defendants initiated and continued a criminal proceeding against the plaintiff without

proper justification.

138.	The criminal case terminated in favor of the plaintiff.

139.	There was no probable cause for the plaintiff's arrest, detention or the criminal case against him.

140.	The prosecution of the plaintiff in the criminal case was undertaken with malice and/or a purpose other than bringing the plaintiff to justice

141.	The defendants caused the criminal prosecution of the plaintiff by falsely asserting that he had committed no less than thirteen crimes that the defendants knew that the plaintiff did not commit.

142.	The defendants' actions constituted malicious prosecution.

143.	The aforesaid acts of the defendants were undertaken deliberately.

144.	As a direct and proximate result of the aforesaid conduct, actions and inactions of the defendants and that stated elsewhere herein, the plaintiff was caused to suffer and continues to suffer temporary and permanent physical injuries, physical pain and suffering, mental pain and suffering, including but not limited to, undue emotional distress, mental anguish, death of Plaintiff's father and plaintiff's older sister and death of Plaintiff's step mother, humiliation, embarrassment, loss of respect, shame, loss of enjoyment of life and disability, economic damages including, but not limited to, past and future medical bills and expenses, past and future lost time and wages from work, past and future lost earning capacity and unnecessary attorneys' fees defending himself from the criminal charges filed without probable cause, all to the great detriment of the plaintiff.

145.	All of the plaintiff's injuries, losses and damages – past, present and prospective – were caused solely by the conduct, actions and inactions of the defendants, as set forth herein, without any negligence, want of due care, or provocation on the part of the plaintiff, either directly or indirectly.

WHEREFORE, the plaintiff, Edmond Machie, demands judgment against the (defendants): POLICE OFFICER TRAINER, and Arlington County Government, Virginia jointly and severally, in the amount of Fifty Million Dollars ($50,000,000.00) in compensatory damages and Five Million Dollars ($5,000,000.00) in punitive damages, plus attorneys' fees, interest and costs.

## Count IX
### (Intentional Infliction of Emotional Distress)

146.        Plaintiff adopts by reference the allegations contained in the foregoing paragraphs of this Complaint with the same effect as if fully set forth herein.

147.        The defendants' improper use of excessive force, unlawfully searching and seizing Plaintiff, abusing Plaintiff, falsely arresting and imprisoning the plaintiff without probable cause, were committed intentionally, recklessly and deliberately, with disregard for the high probability that emotional distress would result in the plaintiff.

148.        The conduct of the defendants was extreme, outrageous and beyond the bounds of decency in society.

149.        The conduct of the defendants was malicious, willful, and intentional.

150.        These actions, and others that may be later stated, constituted the intentional infliction of emotional distress by the defendants upon the plaintiff.

151.        As a direct and proximate result of the aforesaid conduct, actions and inactions of the defendants and that stated elsewhere herein, the plaintiff was caused to suffer and continues to suffer temporary and permanent physical injuries, physical pain and suffering, mental pain and suffering, including but not limited to, undue emotional distress, mental anguish, death of Plaintiff's father and plaintiff's older sister and death of Plaintiff's step mother, humiliation, embarrassment, loss of respect, shame, loss of enjoyment of life and disability, economic damages including, but not limited to, past and future medical bills and expenses, past and future lost time and wages from work, past and future

lost earning capacity and unnecessary attorneys' fees defending himself from the criminal charges filed without probable cause, all to the great detriment of the plaintiff.

152.　　　　　　All of the plaintiff's injuries, losses and damages – past, present and prospective – were caused solely by the conduct, actions and inactions of the defendants, as set forth herein, without any negligence, want of due care, or provocation on the part of the plaintiff, either directly or indirectly.

　　　　　　WHEREFORE, the plaintiff, Edmond Machie, demands judgment against the (defendants): POLICE OFFICER TRAINER, and Arlington County Government, Virginia jointly and severally, in the amount of Fifty Million Dollars ($50,000,000.00) in compensatory damages and Five Million Dollars ($5,000,000.00) in punitive damages, plus attorneys' fees, interest and costs.

## Count X
### (Civil Conspiracy)

153.　　　　　　Plaintiff adopts by reference the allegations contained in the foregoing paragraphs of this Second Amended Complaint with the same effect as if fully set forth herein.

154.　　　　　　The defendants agreed to and did jointly commit the unconstitutional, unlawful and tortious conduct described herein by unlawful and tortious means, including but not limited to: the use of unnecessary force, the unlawful entry, the false arrest, the false imprisonment and the deprivation of the constitutional rights of the plaintiff without Probable Cause.

155.　　　　　　Each defendant took at least one unlawful action in knowing furtherance of the conspiracy.

156.　　　　　　Each defendant shared the same conspiratorial objective.

157.　　　　　　Each defendant positively or tacitly came to a mutual understanding to try to accomplish their common and unlawful plan of the acts described in this Complaint.

158.　　　　　　Additionally, or in the alternative, the defendants watched an open breach of the law and did nothing to seek its prevention.

159.    The plaintiff suffered, and continues to suffer, actual legal damage as a direct and proximate result of the actions of the defendants.

160.    As a direct and proximate result of the aforesaid conduct, actions and inactions of the defendants and that stated elsewhere herein, the plaintiff was caused to suffer and continues to suffer temporary and permanent physical injuries, physical pain and suffering, mental pain and suffering, including but not limited to, undue emotional distress, mental anguish, death of Plaintiff's father and plaintiff's older sister and death of Plaintiff's step mother, humiliation, embarrassment, loss of respect, shame, loss of enjoyment of life and disability, economic damages including, but not limited to, past and future medical bills and expenses, past and future lost time and wages from work, past and future lost earning capacity and unnecessary attorneys' fees defending himself from the criminal charges filed without probable cause, all to the great detriment of the plaintiff.

161.    All of the plaintiff's injuries, losses and damages – past, present and prospective – were caused solely by the conduct, actions and inactions of the defendants, as set forth herein, without any negligence, want of due care, or provocation on the part of the plaintiff, either directly or indirectly.

WHEREFORE, the plaintiff, Edmond Machie, demands judgment against the (defendants): POLICE OFFICER TRAINER, and Defendant Arlington County Government, jointly and severally, in the amount of Fifty Million Dollars ($50,000,000.00) in compensatory damages and Five Million Dollars ($5,000,000.00) in punitive damages, plus attorneys' fees, interest and costs.

## Count XI
### (42 U.S.C. § 1983 – violation of the Fourth Amendment to the United States Constitution)

162.    Plaintiff adopts by reference the allegations contained in the foregoing paragraphs of this Complaint with the same effect as if fully set forth herein.

163.    42 U.S.C. § 1983 provides in part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

164.     The defendants engaged in activity that violated the plaintiff's rights as protected under the Fourth Amendment to the United States Constitution.

165.     By the actions detailed herein, including, but not limited to, the use of excessive force against the plaintiff, the warrantless search and seizure of Plaintiff, the arrest of the plaintiff without probable cause, and the false charges filed against the plaintiff, the defendants deprived the plaintiff of his rights under the Fourth Amendment to the United States Constitution.

166.     The plaintiff has a right to be free from the use of excessive and unnecessary physical force on his person by the police. This right was denied the plaintiff when the defendant police officers used excessive and unnecessary physical force on the plaintiff without legal cause, excuse or justification.

167.     The plaintiff has a right to be free from the warrantless search and seizure without probable cause. This right was denied the plaintiff when the Defendant Officers entered the hotel room and searched it without a warrant and without probable cause or other legal excuse or justification.

168.     The plaintiff has a right to be free from unreasonable searches and seizures. That right was denied the plaintiff when the Defendant Officers searched, seized, beat, detained and arrested Plaintiff without probable cause or other legal excuse or justification.

169.     The plaintiff has a right to be free from arrest and detention without probable cause, legal excuse or justification. This right was denied the plaintiff when the Defendant Officers arrested and detained the plaintiff without probable cause, legal excuse or justification.

170.     The plaintiff has a protected property and liberty interest in his freedom, his ability to

exercise his free will and domain over his person, his ability to be free from the unlawful and unwelcome intrusion into the hotel room he was lawfully present in by the police, his ability to be free from unlawful and unwelcome abuse and attack by the police and his ability to practice his chosen profession and earn a living thereby.

171.        The plaintiff was deprived of numerous protected property and liberty interests by the defendants.

172.        The plaintiff was afforded less process than was due under law by the defendants in depriving him of the rights in question.

173.        By the actions detailed above, including, but not limited to, the use of excessive force against the plaintiff, the warrantless entry into and search of the home without probable cause, the arrest of the plaintiff without probable cause, and the false charges filed against the plaintiff, the defendants deprived the plaintiff of his constitutional rights under the Fourth Amendment to the United States Constitution and 42 U.S.C. § 1983, including, but not limited to, freedom from abuse of power by the police and the other wrongs enumerated in this Complaint.

174.        As a result of the deprivation of his rights, plaintiff was subjected to an unnecessary and excessive use of force.

175.        The individual defendants, at all times relevant hereto, acted under color of State law and in a manner which was not objectively reasonable.

176.        As a direct and proximate result of the aforesaid conduct, actions and inactions of the defendants and that stated elsewhere herein, the plaintiff was caused to suffer and continues to suffer temporary and permanent physical injuries, physical pain and suffering, mental pain and suffering, including but not limited to, undue emotional distress, mental anguish, death of Plaintiff's father and plaintiff's older sister and death of Plaintiff's step mother, humiliation, embarrassment, loss of respect,

shame, loss of enjoyment of life and disability, economic damages including, but not limited to, past

and future medical bills and expenses, past and future lost time and wages from work, past and future

lost earning capacity and unnecessary attorneys' fees defending himself from the criminal charges filed

without probable cause, all to the great detriment of the plaintiff.

177.        All of the plaintiff's injuries, losses and damages – past, present and prospective – were

caused solely by the conduct, actions and inactions of the defendants, as set forth herein, without any

negligence, want of due care, or provocation on the part of the plaintiff, either directly or indirectly.

        WHEREFORE, the plaintiff, Edmond Machie, demands judgment against the (defendants):

POLICE OFFICER TRAINER, and Arlington County, Virginia jointly and severally, in the amount of

Fifty Million Dollars ($50,000,000.00) in compensatory damages and Five Million Dollars

($5,000,000.00) in punitive damages, plus attorneys' fees, interest and costs.

## Count XII
### (42 U.S.C. § 1983 – violation of the Fifth Amendment to the United States Constitution)

178.        Plaintiff adopts by reference the allegations contained in the foregoing paragraphs of this

Complaint with the same effect as if fully set forth herein.

    (a)        The Fifth Amendment of the U.S. Constitution provides, "No person shall be held to
answer for a capital, or otherwise infamous crime, unless on a presentment or indictment of a
grand jury, except in cases arising in the land or naval forces, or in the militia, when in actual
service in time of war or public danger; nor shall any person be subject for the same offense to
be twice put in jeopardy of life or limb; nor shall be compelled in any criminal case to be a
witness against himself, nor be deprived of life, liberty, or property, without due process of law;
nor shall private property be taken for public use, without just compensation."

    (b)        42 U.S.C. § 1983 provides in part:
Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any
State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of
the United States or other person within the jurisdiction thereof to the deprivation of any rights,
privileges, or immunities secured by the Constitution and laws, shall be liable to the party
injured in an action at law, suit in equity, or other proper proceeding for redress.

179.        The defendants engaged in activity that violated the plaintiff's rights as protected under

the Fifth Amendment to the United States Constitution.

180.          By the actions detailed herein, including, but not limited to, the use of excessive force against the plaintiff, warrantless search and seizure of Plaintiff without probable cause, the arrest of the plaintiff without probable cause, and the false charges filed against the plaintiff, the defendants deprived the plaintiff of his rights under the Fifth Amendment to the United States Constitution.

181.          The plaintiff has a right to be free from the use of excessive and unnecessary physical force on his person by the police. This right was denied the plaintiff when the defendant police officers used excessive and unnecessary physical force on the plaintiff without legal cause, excuse or justification.

182.          The plaintiff has a right to be free from the warrantless entry into and search of the home without probable cause. This right was denied the plaintiff when the Defendant Officers search and seized Plaintiff without probable cause or other legal excuse or justification.

183.          The plaintiff has a right to be free from unreasonable searches and seizures. That right was denied the plaintiff when the Defendant Officers searched, seized, beat, detained and arrested Plaintiff without probable cause or other legal excuse or justification.

184.          The plaintiff has a right to be free from arrest and detention without probable cause, legal excuse or justification. This right was denied the plaintiff when the Defendant Officers arrested and detained the plaintiff without probable cause, legal excuse or justification.

185.          The plaintiff has a protected property and liberty interest in his freedom, his ability to exercise his free will and domain over his person, his ability to be free from unlawful and unwelcome abuse and attack by the police and his ability to practice his chosen profession and earn a living thereby.

186.          The plaintiff was deprived of numerous protected property and liberty interests by the

defendants.

187.        The plaintiff was afforded less process than was due under law by the defendants in depriving him of the rights in question.

188.        By the actions detailed above, including, but not limited to, the use of excessive force against the plaintiff, the warrantless search and seizure of Plaintiff, the arrest of the plaintiff without probable cause, and the false charges filed against the plaintiff, the defendants deprived the plaintiff of his constitutional rights under the Fifth Amendment to the United States Constitution and 42 U.S.C. § 1983, including, but not limited to, freedom from abuse of power by the police and the other wrongs enumerated in this Complaint.

189.        As a result of the deprivation of his rights, plaintiff was subjected to an unnecessary and excessive use of force.

190.        The individual defendants, at all times relevant hereto, acted under color of State law and in a manner which was not objectively reasonable.

191.    As a direct and proximate result of the aforesaid conduct, actions and inactions of the defendants and that stated elsewhere herein, the plaintiff was caused to suffer and continues to suffer temporary and permanent physical injuries, physical pain and suffering, mental pain and suffering, including but not limited to, undue emotional distress, mental anguish, death of Plaintiff's father and plaintiff's older sister and death of Plaintiff's step mother, humiliation, embarrassment, loss of respect, shame, loss of enjoyment of life and disability, economic damages including, but not limited to, past and future medical bills and expenses, past and future lost time and wages from work, past and future lost earning capacity and unnecessary attorneys' fees defending himself from the criminal charges filed without probable cause, all to the great detriment of the plaintiff.

192.        All of the plaintiff's injuries, losses and damages – past, present and prospective – were

caused solely by the conduct, actions and inactions of the defendants, as set forth herein, without any negligence, want of due care, or provocation on the part of the plaintiff, either directly or indirectly.

WHEREFORE, the plaintiff Edmond Machie, demands judgment against the defendants, TRAINER, and Arlington County Government, jointly and severally, in the amount of Fifty Million Dollars ($50,000,000.00) in compensatory damages and Five Million Dollars ($5,000,000.00) in punitive damages, plus attorneys' fees, interest and costs.

## COUNT XIII
### (18 U.S.C. § 2340 (the "Torture Act")

193.        Plaintiff adopts by reference the allegations contained in the foregoing paragraphs of this Complaint with the same effect as if fully set forth herein.

195.        An act of torture committed outside the United States by a U.S. national or a non-U.S. national who is present in the United States is punishable under 18 U.S.C. § 2340. The definition of torture used is as follows: As used in this chapter—

(1) "torture" means an act committed by a person acting under the color of law specifically intended to inflict severe physical or mental pain or suffering (other than pain or suffering incidental to lawful sanctions) upon another person within his custody or physical control;

(2) "severe mental pain or suffering" means the prolonged mental harm caused by or resulting from—

(A) the intentional infliction or threatened infliction of severe physical pain or suffering;

(B) the administration or application, or threatened administration or application, of mind-altering substances or other procedures calculated to disrupt profoundly the senses or the personality;

(C) the threat of imminent death; or

(D) the threat that another person will imminently be subjected to death, severe physical pain or suffering, or the administration or application of mind-altering substances or other procedures

calculated to disrupt profoundly the senses or personality; and

(3) "United States" means the several states of the United States, the District of Columbia, and the commonwealths, territories, and possessions of the United States.

WHEREFORE, the plaintiff, Edmond K. Machie, demands judgment against the (defendants): POLICE OFFICER TRAINER, and Arlington County, Virginia jointly and severally, in the amount of Fifty Million Dollars ($50,000,000.00) in compensatory damages and Five Million Dollars ($5,000,000.00) in punitive damages, plus attorneys' fees, interest and costs.

## Count XIV
### (42.S.C. § 1983 – Civil Conspiracy)

196.        Plaintiff adopts by reference the allegations contained in the foregoing paragraphs of this Complaint with the same effect as if fully set forth herein.

197.        The defendants agreed to and did jointly commit the unconstitutional, unlawful and tortious conduct described herein by unlawful and tortious means, including but not limited to: the use of unnecessary force, the unlawful search and seizure, the false arrest, the false imprisonment and the deprivation of the constitutional rights of the plaintiff.

198.        Defendant took at least one unlawful action in knowing furtherance of the conspiracy. Each defendant shared the same conspiratorial objective.

199.        Defendant positively or tacitly came to a mutual understanding to try to accomplish their common and unlawful plan of the acts described in this Complaint.

200.        Additionally, or in the alternative, the defendants watched an open breach of the law and did nothing to seek its prevention.

201.        The plaintiff suffered, and continues to suffer, actual legal damage as a direct and proximate result of the actions of the defendants.

194.        As a direct and proximate result of the aforesaid conduct, actions and inactions of the

defendants and that stated elsewhere herein, the plaintiff was caused to suffer and continues to suffer temporary and permanent physical injuries, physical pain and suffering, mental pain and suffering, including but not limited to, undue emotional distress, mental anguish, death of Plaintiff's father and plaintiff's older sister and death of Plaintiff's step mother, humiliation, embarrassment, loss of respect, shame, loss of enjoyment of life and disability, economic damages including, but not limited to, past and future medical bills and expenses, past and future lost time and wages from work, past and future lost earning capacity and unnecessary attorneys' fees defending himself from the criminal charges filed without probable cause, all to the great detriment of the plaintiff.

202.         The plaintiff's injuries, losses and damages – past, present and prospective – were caused solely by the conduct, actions and inactions of the defendants, as set forth herein, without any negligence, want of due care, or provocation on the part of the plaintiff, either directly or indirectly.

WHEREFORE, the plaintiff, Edmond Machie, demands judgment against the (defendants): POLICE OFFICER TRAINER, and Arlington County, Virginia jointly and severally, in the amount of Fifty Million Dollars ($50,000,000.00) in compensatory damages and Five Million Dollars ($5,000,000.00) in punitive damages, plus attorneys' fees, interest and costs.

## Count XV
### (42.S.C. § 1983 – Municipal Liability)

200.   Plaintiff adopts by reference the allegations contained in the foregoing paragraphs of this Complaint with the same effect as if fully set forth herein.

201.   The defendants agreed to and did jointly commit the unconstitutional, unlawful and tortious conduct described herein by unlawful and tortious means, including but not limited to: the use of unnecessary force, the unlawful entry, the false arrest, the false imprisonment and the deprivation of the constitutional rights of the plaintiff.

202.   It is Arlington County County's policy, practice, and/or custom to permit and/or fail to

discipline its officer for filing false police reports.

203. If is the policy, practice, and/or custom of Arlington County to arrest, imprison, and/or utilize excessive force against individuals, including utilizing false police reports. Said policies, practices, and/or customs are persistent and widespread in Arlington County.

204. The offensive acts and omissions described in this Complaint were taken by the Defendant Officers in furtherance of said municipal policies, practices, and/or customs.

205. Said policies, practices, and/or customs result in deliberate indifference to the rights of all those who come into contact with Arlington County police officers.

206. As a result of said policies, practices, and/or customs, Plaintiff was caused to suffer from the use of unnecessary force, the unlawful search and seizure, the false arrest, the false imprisonment and the deprivation of the constitutional rights of the plaintiff.

207. The plaintiff suffered, and continues to suffer, actual legal damage as a direct and proximate result of the actions of the defendants.

208. As a direct and proximate result of the aforesaid conduct, actions and inactions of the defendants and that stated elsewhere herein, the plaintiff was caused to suffer and continues to suffer temporary and permanent physical injuries, physical pain and suffering, mental pain and suffering, including but not limited to, undue emotional distress, mental anguish, death of Plaintiff's father and plaintiff's older sister and death of Plaintiff's step mother, humiliation, embarrassment, loss of respect, shame, loss of enjoyment of life and disability, economic damages including, but not limited to, past and future medical bills and expenses, past and future lost time and wages from work, past and future lost earning capacity and unnecessary attorneys' fees defending himself from the criminal charges filed without probable cause, all to the great detriment of the plaintiff.

209. All of the plaintiff's injuries, losses and damages – past, present and prospective – were

caused solely by the conduct, actions and inactions of the defendants, as set forth herein, without any

negligence, want of due care, or provocation on the part of the plaintiff, either directly or indirectly.

WHEREFORE, the plaintiff, Edmond Machie, demands judgment against the defendants,

TRAINER, and Defendant Arlington County, Virginia jointly and severally, in the amount of Fifty

Million Dollars ($50,000,000.00) in compensatory damages and Five Million Dollars ($5,000,000.00)

in punitive damages, plus attorneys' fees, interest and cost .

## COUNT XVI
### (18 U.S. Code § 1623 - False declarations before grand jury or court)

213.    Plaintiff adopts by reference the allegations contained in the foregoing paragraphs of this

Complaint with the same effect as if fully set forth herein.

> **(a)**    Whoever under oath (or in any declaration, certificate, verification, or statement under penalty of perjury as permitted under section 1746 of title 28, United States Code) in any proceeding before or ancillary to any court or grand jury of the United States knowingly makes any false material declaration or makes or uses any other information, including any book, paper, document, record, recording, or other material, knowing the same to contain any false material declaration, shall be fined under this title or imprisoned not more than five years, or both.
>
> **(b)**    This section is applicable whether the conduct occurred within or without the United States.
>
> **(c)**    An indictment or information for violation of this section alleging that, in any proceedings before or ancillary to any court or grand jury of the United States, the defendant under oath has knowingly made two or more declarations, which are inconsistent to the degree that one of them is necessarily false, need not specify which declaration is false if—
>
> **(1)**    each declaration was material to the point in question, and
>
> **(2)**    each declaration was made within the period of the statute of limitations for the offense charged under this section.
>
> In any prosecution under this section, the falsity of a declaration set forth in the indictment or information shall be established sufficient for conviction by proof that the defendant while under oath made irreconcilably contradictory declarations material to the point in question in any proceeding before or ancillary to any court or grand jury. It shall be a defense to an indictment or information made pursuant to the first sentence of this subsection that the defendant at the time he made each declaration believed the declaration was true.
>
> **(d)**    Where, in the same continuous court or grand jury proceeding in which a declaration is made, the person making the declaration admits such declaration to be false, such admission shall bar prosecution under this section if, at the time the admission

is made, the declaration has not substantially affected the proceeding, or it has not become manifest that such falsity has been or will be exposed.

      **(e)**     Proof beyond a reasonable doubt under this section is sufficient for conviction. It shall not be necessary that such proof be made by any particular number of witnesses or by documentary or other type of evidence.

214. As a result of the deprivation of his rights, plaintiff was subjected to an unnecessary and excessive use of force.

215.      The individual defendants, at all times relevant hereto, acted under color of State law and in a manner which was not objectively reasonable.

216.      As a direct and proximate result of the aforesaid conduct, actions and inactions of the defendants and that stated elsewhere herein, the plaintiff was caused to suffer and continues to suffer temporary and permanent physical injuries, physical pain and suffering, mental pain and suffering, including but not limited to, undue emotional distress, mental anguish, death of Plaintiff's father and plaintiff's older sister and death of Plaintiff's step mother, humiliation, embarrassment, loss of respect, shame, loss of enjoyment of life and disability, economic damages including, but not limited to, past and future medical bills and expenses, past and future lost time and wages from work, past and future lost earning capacity and unnecessary attorneys' fees defending himself from the criminal charges filed without probable cause, all to the great detriment of the plaintiff.

217.      All of the plaintiff's injuries, losses and damages – past, present and prospective – were caused solely by the conduct, actions and inactions of the defendants, as set forth herein, without any negligence, want of due care, or provocation on the part of the plaintiff, either directly or indirectly.

WHEREFORE, the plaintiff, Edmond K. Machie, demands judgment against the (defendants): POLICE OFFICER TRAINER, and Arlington County, Virginia jointly and severally, in the amount of Fifty Million Dollars ($50,000,000.00) in compensatory damages and Five Million Dollars

($5,000,000.00) in punitive damages, plus attorneys' fees, interest and costs.

Respectfully submitted,

Edmond K. Machie

_____/s/_____

EDMOND MACHIE

4713 Wisconsin Av NW

Washington DC 20016

Tel:571-343-1696

E-mail:Edmond.Machie@e-macc.com

*Plaintiff, Pro Se*

### JURY DEMAND

The plaintiff demands trial by jury in connection with all counts of his Complaint.

Respectfully submitted,

Edmond Machie

_____/s/_____

EDMOND MACHIE

4713 Wisconsin Av NW

Washington DC 20016

Tel:571-343-1696

E-mail:Edmond.Machie@e-macc.com

*Plaintiff, Pro Se*

**On this day of 22nd of June, 2018**